**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Ines Diaz Villafana (State Bar No. 354099)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
idiaz@bursor.com
kvalenzuela@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNA BAYER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UTZ BRANDS, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Joanna Bayer ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Utz Brands, Inc. ("Utz" or "Defendant"), based on Utz's false and deceptive advertising and labeling of its Boulder Canyon Avocado Oil Class Sea Salt Kettle Style Potato Chips (the "Product"). Plaintiff makes the following allegations based on the investigation of her counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit concerning Defendant's false and misleading labeling and marketing on its Product, the Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips, manufactured, sold, and produced by Defendant. Through Defendant's Product's packaging, Defendant prominently and unequivocally represents its Product is made with "Avocado Oil" (the "Avocado Oil Representation").

2. The words "Avocado Oil" appear on the front of every package of the Product, as part of the Product's own name. The Avocado Oil Representation is reinforced by the ingredient statement on the back label, which declares just three ingredients—"Potatoes, Avocado Oil, Sea Salt"—and which declares no oil other than avocado oil.

3. Based on the Avocado Oil Representation, reasonable consumers are misled to believe that the oil used to make the Product is avocado oil, and that the Product is not made with other, cheaper oils. However, unbeknownst to consumers, Defendant's representations are false and misleading because Defendant has engaged in economic adulteration of the Product.

4. Specifically, a peer-reviewed scientific testing conducted by food scientists at the University of California, Davis ("UC Davis")—published in July 2026 in the journal *Applied Food Research*—extracted the oil from commercially processed foods labeled as exclusively containing avocado oil, including the Product.[1] These researchers analyzed the product samples, including the

[1] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

Product, to assess their fatty acid and sterol composition against the internationally recognized compositional standards for authentic avocado oil codified in the *Codex Alimentarius*.[2]

5. The UC Davis researchers collected and analyzed two separate production lots of the Product. **Neither lot sample of the Product was found to be compositionally consistent with authentic avocado oil.** Instead, the oil recovered from the Class Product bore the compositional signature of cheap, refined vegetable (seed) oils—the very oils that consumers pay a premium to avoid.

6. Avocado oil is a premium ingredient, and consumers pay a premium for products made with it. Plaintiff and Class members paid that premium for the Product. Had they known the truth—that the Product is not made with avocado oil or that the Product contains other, cheap, refined seed oils—they would not have purchased the Product, or would have paid substantially less for it.

7. Accordingly, Plaintiff brings claims individually and on behalf of similarly situated purchasers of Defendant's Product for violations of (i) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq*.; (ii) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (iii) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (iv) breach of express warranty; and (v) unjust enrichment.

## PARTIES

8. Plaintiff Joanna Bayer is a citizen of California and resident of Oakley, California. Plaintiff Bayer has purchased Defendant's Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips on multiple occasions via Thrive Market while located in Oakley, California, as recently as on or around August 1, 2026. Plaintiff Bayer regularly purchased Defendant's Product believing it to be a healthy alternative to snacks made with seed oils. Prior to purchasing Defendant's Product, Plaintiff Bayer saw and reasonably relied on Defendant's affirmative representation that the Product was made with "Avocado Oil." Plaintiff Bayer intentionally avoids

[2] *Id.* at 3.

seed oils because of their documented harmful health effects. Plaintiff Bayer reasonably relied on the Avocado Oil Representation prominently made on the Product's front packaging in choosing to purchase the Product. Plaintiff Bayer understood Defendant's representation to mean exactly what Defendant claims: that the Product is made with avocado oil and that the only oil used is avocado oil. This representation was part of the basis of the bargain in that she would not have purchased the Product or would not have purchased it on the same terms had she known Defendant's representation and warranty regarding its avocado oil content was untrue. In making her purchase, Plaintiff Bayer paid a price premium for the Product. As a direct result of Defendant's misleading, false, unfair, and deceptive practices as alleged herein, Plaintiff Bayer suffered economic injuries.

9. Plaintiff Bayer remains interested in purchasing Defendant's Product in the future. However, Plaintiff Bayer is unable to determine the true composition of the oil in the Product absent scientific testing, and so will be unable to purchase the Product in the future, although she would like to. So long as Defendant markets the Product as containing avocado oil when the Product actually does not contain avocado oil and instead contains other undisclosed oils, when presented with false or misleading information when shopping, Plaintiff Bayer will be unable to make informed decisions about whether to purchase Defendant's Product and will be unable to evaluate the different prices between Defendant's Product and competitors' products. Plaintiff Bayer is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Product's oil contents are accurately represented.

10. Defendant Utz Brands, Inc. is a Delaware corporation with its headquarters and principal place of business in Hanover, Pennsylvania. At all times relevant to this Complaint, Defendant has advertised, marketed, distributed, or sold the Product to consumers throughout the United States and California, including in this District.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed classes are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative classes, and most

members of the proposed classes are citizens of states different from Defendant. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12. This Court has specific personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with the State of California, and otherwise intentionally avails itself of the markets of the State of California, through the promotion, marketing, distribution, and sale of the Product in this State, including in this District, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Bayer's claims occurred in this District. Specifically, Plaintiff Bayer purchased the Product in this District within the statute of limitations period.

## FACTUAL ALLEGATIONS

### I. DEFENDANT'S PRODUCT

14. Utz promotes Boulder Canyon as America's fastest-growing salty snack brand and as the number one salty snack brand in the natural channel.[3]

15. Defendant markets its Boulder Canyon brand as providing consumers with snacks made with "premium oils" and real, simple ingredients, rather than the refined seed oils used in conventional snack foods. *See* Figures 1 and 2.

///

///

///

///

///

///

///

[3] BusinessWire, *Utz Brands Showcases New Chips, Pretzels and Bestsellers at Natural Products Expo West*, Feb 27, 2026, https://www.businesswire.com/news/home/20260227548219/en/Utz-Brands-Showcases-New-Chips-Pretzels-and-Bestsellers-at-Natural-Products-Expo-West.




**Figure 1**

**Crafted Simply.**
**Enjoyed Boldly.**

At Boulder Canyon, we've always believed that real food doesn't need a long ingredient list. Every chip we make is rooted in simplicity—just potatoes, premium oils, and the perfect seasoning. Our approach to snacking is the same as our approach to life: slow down, stay grounded, and savor what matters.

Whether you're hiking a trail or sharing a meal at home, we're proud to bring you snacks that celebrate flavor, integrity, and the beauty of doing things the right way.

**Figure 2**

16. In other words, Defendant puts its Boulder Canyon brand out to be a healthier, premium snack product and consumers, such as Plaintiff and Class Members expect this level of quality.

17. Defendant is directly involved in the manufacturing, sale, and distribution of the Product, and is responsible for the advertising, marketing, trade dress, and packaging of the Product. Defendant developed, marketed, and sold the Product during the class period. Defendant is also directly responsible for ensuring that its Product's oil content conforms to the advertised claims. Thus, Defendant's failure to ensure at its manufacturing facilities that its Product actually contained avocado oil affects all batches and lots of Defendant's Product.

18. Defendant has labeled, advertised, distributed, and sold the Product throughout the United States, including in California, during the statute of limitations period. The Product is sold at national and regional grocery retailers—including, among others, Sam's Club, Whole Foods Market, Sprouts Farmers Market, Target, Kroger and its banners, Albertsons/Safeway and its banners, Walmart, and Costco, and through online retailers including Thrive Market and Amazon.com.

## II. THE AVOCADO OIL REPRESENTATION IS FALSE AND MISLEADING

19. The Product consists of Defendant's Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips.

20. As a brand touting its premium oil use, Defendant prominently displays the Avocado Oil Representation on the front label of the Product, in the same manner, on every package, as depicted in the following representative image (red box added for emphasis):

///

///

///

///

///

///

///

///

///

///




**Figure 3**

21. The Avocado Oil Representation is not a peripheral or fine-print claim. The words "Avocado Oil" are part of the Product's name, and they appear on the front of the package, in large type, above the flavor designation. *See* Figure 3. Utz uses those words to distinguish the Product from the Boulder Canyon chips containing other oils, including cheaper oils like sunflower oil, in particular because those other products do not list the oil used prominently on the front of the packaging. *See, e.g.*, Figure 4 (product containing sunflower oil and safflower oil, but omitting mention of the oil on the front of the package).




**Figure 4**

22. Additionally, the Avocado Oil Representation is reinforced—not qualified—by the back label of the Product. The ingredient statement reads, in its entirety: "Potatoes, Avocado Oil, Sea Salt." Figures 5 and 6.

///

///

///

///

///

///

///

///

///

///

///

///

///


LIVE BETTER.
EAT BOULDER.
OUR JOURNEY STARTED IN BOULDER, COLORADO IN 1994 WITH THE SIMPLE BELIEF THAT BETTER TASTES COME FROM BETTER INGREDIENTS. SO WE USE ONLY THE BEST INGREDIENTS TO CRAFT OUR KETTLE STYLE POTATO CHIPS IN SMALL BATCHES. THE RESULT IS A PERFECTLY SEASONED CHIP THAT IS CRISPY, CRUNCHY AND BOLD - MUCH LIKE THE OUTDOORS THAT INSPIRES US ALL.
Nutrition Facts
Calories 160
WHY AVOCADO OIL?
IT BRINGS A SMOOTH
buttery
taste
AND
BIG
CRUNCH
TO OUR KETTLE STYLE CHIPS
SO YOU CAN LIVE BETTER
BY EATING BOULDER.
NGREDIENTS POTATOES, AVOCADO OIL, SEA SALT

**Figure 5**

///

///

///

///

///

///

///

///

///




**Figure 6**

23. The Product declares exactly one oil—"Avocado Oil." It declares no other oil, no oil blend, and no "and/or" oil statement. That omission is meaningful, because Defendant uses an "and/or" oil statement—"Sunflower Oil and/or Safflower Oil"—on the Boulder Canyon chips that are made with seed oils. *See* Figure 4. A reasonable consumer who reads "Avocado Oil" on the front of the package, and then finds "Avocado Oil"—and only "Avocado Oil"—on a three-ingredient statement, reasonably understands that the oil in the Product is avocado oil.

24. Defendant's Avocado Oil Representation is however false and misleading because, as found by the UC Davis researchers, the Product is not compositionally consistent with authentic avocado oil, and instead exhibits the compositional profile of cheaper refined vegetable oils.[4] This

[4] UC Davis, *Studied Products AFRES*, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/details.

means the Product has either substituted the avocado oil for other cheaper oils, or has diluted the avocado oil with cheaper oils.[5]

25. At bottom, Defendant has engaged in economic adulteration and has mislead consumers into believing they are purchasing a Product made only with high quality, avocado oil. Thus, Defendant's Avocado Oil Representation is actionable.

## III. THE AVOCADO OIL REPRESENTATION IS MATERIAL TO CONSUMERS

26. The Avocado Oil Representation is material—*i.e.*, it is important to consumers with respect to their decision to purchase the Product.[6]

27. Avocado oil is well known to be one of the healthiest food oils. For example, studies have indicated that compounds in avocado oil may help protect the liver, lower blood pressure and LDL cholesterol, and reduce osteoarthritis-related joint pain, post-meal blood sugar, and total cholesterol levels.[7] It is also high in monounsaturated fat, which is considered more heart healthy than saturated fat, while being slightly more stable than the polyunsaturated fats typically found in vegetable oils.[8] Avocado oil is also in high demand because it has the highest smoke point of all plant-based food oils, and is thus more desirable for high-heat applications such as frying.[9]

28. Each of these qualities, among others, motivates consumers to pay a premium price for products made with avocado oil as compared to products made with other food oils like canola, corn, peanut, safflower, soybean, and sunflower oil.

29. A substantial and growing number of consumers specifically seek to avoid refined vegetable and seed oils in their diets, and choose products made with avocado oil for that reason.

---

[5] Lopez-Alvarez, *et al.*, *supra* note 1.

[6] For instance, a 5.25 oz. bag of the Product costs approximately $4.69, or roughly $0.89 per ounce. By contrast, an 8 oz. bag of Lay's Classic Potato Chips, which are made with vegetable oil, costs approximately $3.99, or $0.50 per ounce.

[7] Healthline, *Evidence-Based Health Benefits of Avocado* Oil, https://www.healthline.com/nutrition/9-avocado-oil-benefits (last visited Aug. 13, 2026).

[8] MasterClass, *What Is Avocado Oil? A Guide to Cooking With Avocado Oil*, https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil (last visited Aug. 13, 2026).

[9] *Id.*

For those consumers, a front-of-package claim that a food is made with "Avocado Oil" is not merely a preference—it is the reason the product is purchased at all.

30. Regardless of whether consumers believe that avocado oil is superior to other oils or possesses the qualities described above, the question whether the oil in a food product is the oil that the label says it is—rather than a cheaper oil substituted for it—is material to reasonable consumers. Consumers may be allergic to, or have other reasons for not consuming, certain oils. Consumers of the Product reasonably expect to know what type of oil they are consuming.

31. The UC Davis researchers observed the significance of front-of-package oil claims, noting that "consumers may reasonably interpret front-of-package oil claims as signals of meaningful product differentiation," and that because all of the products studied "declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations," "consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims such as 'made with 100% avocado oil' to be the primary lipid source of the product."[10]

32. Consumers purchased, and continue to purchase, the Product in part because the Avocado Oil Representation conveys the unequivocal message that the Product is made with avocado oil. Plaintiff and Class members would have paid less for the Product, or would not have purchased it at all, if not for the Avocado Oil Representation. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium that the Product commands in the market as a result of Defendant's representation that the Product is made with avocado oil.

## IV. UC DAVIS'S STUDY ESTABLISHES THAT DEFENDANT HAS EITHER DILUTED OR SUBSTITUTED THE AVOCADO OIL IN THE PRODUCT – THUS ENGAGING IN ECONOMIC ADULTERATION

33. The study, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods* (the "Study"), conducted by researchers at UC Davis, reported the

[10] Lopez-Alvarez, *et al.*, *supra* note 1 at 2, 4.

results of the first systematic study of whether avocado oil and olive oil used as ingredients in commercially processed foods are authentic.[11]

34. The UC Davis researchers selected commercially processed foods in three categories—chips, mayonnaise, and salad dressings—based on "consumer popularity and market availability."[12] Critically, the researchers included only products that "declared a single oil (*e.g.*, avocado oil or olive oil) in the ingredient statement and did not list additional edible oils."[13] The Products satisfied that criterion and were included in the Study.

35. The UC Davis researchers analyzed 74 samples, representing 37 distinct commercial products, each of which was collected in two separate production lots. The Product was among the products tested.[14] In the product information accompanying the Study, Defendant's Boulder Canyon "Avocado Oil Classic Sea Salt Kettle Style Potato Chips" is identified as Sample Nos. 1 and 2.

36. Samples were purchased in 2025 and 2026 from online sources and retail stores in California and stored unopened in the laboratory until analysis.[15] Two separate lots of each product were collected and analyzed.[16] The products were therefore subjected to analyses drawn from two independent production lots.[17]

37. Researchers measured both the Product's fatty acid profile and sterol profile.[18] They classified samples by comparing the measured fatty acid and sterol profiles against the *Codex Alimentarius* Standard for Named Vegetable Oils (CXS 210-1999) and the Standard for Olive Oils

---

[11] *Id.*

[12] *Id.* at 2.

[13] *Id.*

[14] UC Davis, *Studied Products AFRES*, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/details.

[15] Lopez-Alvarez, *et al.*, *supra* note 1 at 2.

[16] *Id.*

[17] *Id.*

[18] *Id.*

and Olive Pomace Oils (CXS 33-1981), which are "intended to encompass expected natural variability" of fatty acid and sterol compositions in oil.[19]

38. The Study's classification criteria were deliberately conservative and generous to the products tested.[20] To account for analytical uncertainty, biological variability, and potential processing influences, the researchers tolerated minor deviations: a deviation limited to a single fatty acid or sterol marker, and "not exceeding 10% beyond established compositional limits," was not treated as sufficient to classify a sample as inconsistent, and such samples "were therefore considered consistent."[21] A sample was treated as merely "borderline"—and not inconsistent—where no more than two markers marginally exceeded that same 10% allowance without concordant deviations elsewhere. And when a sample was fully consistent in either fatty acids or sterols and borderline in the other, "it was considered consistent with authentic oil."[22] Only samples with "multiple deviations or patterns inconsistent with authentic reference profiles" were classified as inconsistent.[23]

39. **The Product failed both lots tested.** Researchers classified both lot samples as inconsistent with the composition of avocado oil.

40. The Product was not an outlier. Of the 28 avocado oil–labeled chip samples the UC Davis researchers tested, 26—**93%**—were classified as inconsistent with authentic avocado oil. Across all avocado oil–labeled products in the Study, "[e]ighty-nine percent of avocado oil–labeled products exhibited compositional patterns inconsistent with authentic avocado oil."[24]

41. Principal component analysis of the fatty acid and sterol profiles "demonstrated clear separation between samples classified as consistent and inconsistent with their labeled oil claims."[25] "Many avocado oil–labeled samples clustered near" a vegetable-oil comparator sample

---

[19] *Id.*

[20] *See id.* at 3.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 1, 3.

[25] *Id.* at 4.

"containing canola, corn, soybean, and/or sunflower oil, suggesting that the fatty acid profiles of those products are more consistent with polyunsaturated vegetable oil compositions than with authentic avocado oil."[26]

42. In short, the oil in the Product is not avocado oil, or at a minimum, not fully avocado oil. It bears the compositional signature of the cheap refined vegetable oils that avocado oil is supposed to replace.

## V. THE FRYING PROCESS DOES NOT EXPLAIN THE COMPOSITIONAL INCONSISTENCY

43. The UC Davis researchers anticipated and tested the obvious defense—that the compositional deviations they observed might be an artifact of cooking rather than evidence of what oil went into the Product—and refuted it experimentally.[27]

44. The researchers prepared model products in the laboratory using retail avocado oils that they employed as reference oils, and whose pre-frying fatty acid and sterol profiles fell within every applicable Codex range.

45. The results were unambiguous. "For avocado oil subjected to frying [ ], absolute changes in major fatty acids were less than 0.6%." Cis-vaccenic acid—the key discriminatory marker for avocado oil authenticity—"decreased by only 0.1% following frying in both potato and tortilla chips." In other words, "[t]hese model product experiments indicate that typical frying and emulsification conditions do not substantially alter oil authenticity markers."

46. The magnitude of the deviations found in the Product cannot be explained by frying, by processing, or by natural variation. It is explained by the fact that the Product is not made with avocado oil.

## VI. DEFENDANT KNEW OR SHOULD HAVE KNOWN THE AVOCADO OIL REPRESENTATION WAS FALSE

47. Defendant knows, or reasonably should know, that its labeling of the Product is misleading to consumers.

---

[26] *Id.* at 6.

[27] *See id.* at 7.

48. Adulteration of avocado oil has been publicly and repeatedly documented since at least 2020, when UC Davis researchers published the first report on the quality and purity of avocado oil sold in the United States and found that the majority of the samples tested were adulterated or of substandard quality.[28] A follow-up study published in 2023 found that approximately 70% of private-label avocado oils tested were "rancid or mixed with other oils."[29]

49. Defendant is a sophisticated food manufacturer that sources, formulates, and markets the Product. Defendant is aware of industry studies and trends, and is aware of the well-documented problem of adulteration in the avocado oil supply chain. Thus, Defendant knew or should have known that the Product does not contain avocado oil or is diluted with other cheaper oils.

## FED. R. CIV. P. 9(b) ALLEGATIONS

50. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

51. **WHO:** Defendant Utz Brands, Inc.

52. **WHAT:** Defendant's conduct was deceptive because it deceived consumers into believing that the Product was made with avocado oil and/or that avocado oil was the only oil used to make the Product. Defendant failed to accurately label the Product with an accurate statement of what kind of oils were used to make it. Defendant knew or should have known, as the manufacturer and marketer of the Product with superior knowledge of the composition of its Product, that this information is material to reasonable consumers. Yet, Defendant misrepresented on the labeling of its Product that it contained avocado oil and/or exclusively contained avocado oil, and failed to

[28] Hilary S. Green & Selina C. Wang, *First report on quality and purity evaluations of avocado oil sold in the US*, https://www.sciencedirect.com/science/article/pii/S0956713520302449.

[29] Tiffany Dobbyn, *Nearly 70% of Private Label Avocado Oil Rancid or Mixed With Other Oils*, https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-oils; Hilary S. Green & Selina C. Wang, *Purity and quality of private labelled avocado oil*, https://www.sciencedirect.com/science/article/pii/S0956713523002372.

ensure the Product was in fact made with avocado oil like Defendant warranted. Defendant knew or should have known that the Product was not made with avocado oil and/or exclusively made with avocado oil as labeled because Defendant is the manufacturer of the Product and has quality control testing protocols set in place that should have alerted Defendant of the nature of the Product's actual oil content.

53. **WHEN:** Defendant engaged in this deceptive conduct continuously throughout the applicable statutory periods, including at the point of sale. Defendant's false and misleading Avocado Oil Representation was printed on the Product front label and online sales pages for consumers to view and rely on.

54. **WHERE:** Defendant's misrepresentation was made on the Product's front packaging and on the back of the package's ingredients list and were thus viewed by every purchaser, including Plaintiff, at the point of sale in every transaction. The Product is sold online and in brick-and-mortar stores nationwide. Because each individual package of the Product claims to be made with and/or exclusively with avocado oil, Defendant's dilution or substation of avocado oil with other oils occurred in Defendant's manufacturing facilities and thus affects all production of the Product, including the Plaintiff's purchases of the Product.

55. **HOW:** Defendant misrepresented on the Product's front packaging that it was made with avocado oil when independent testing revealed that it contains oils different than the avocado oil represented, and/or the Product did not contain oil consistent with the composition of avocado oil. And as discussed in detail throughout the Complaint, Plaintiff and Class Members read and relied on Defendant's misrepresentation regarding the avocado oil content before purchasing the Product and in choosing to purchase the Product.

56. **WHY:** Defendant misrepresented the avocado oil content it included in its Product. This representation was material in that it induced consumers like Plaintiff to purchase the Product for its purported nutritional benefit while charging consumers a price premium. Accordingly, due to the representation, Plaintiff and Class Members paid a price premium for the Product that they would not have, or would have paid substantially less for, had the Product not been diluted or substituted with oils other than avocado oil contrary to Defendant's express representation. As

such, Defendant unlawfully profited by selling the Product to thousands of consumers throughout the nation, including Plaintiff and the Class Members.

57. **INJURY:** Plaintiff and Class Members were injured by Defendant's conduct in that they would not have purchased Defendant's Product, or would not have purchased them on the same terms, had they known that Defendant's Product did not contain avocado oil and/or did not exclusively contain avocado oil, like Defendant expressly represented on the packaging.

## CLASS ALLEGATIONS

58. Plaintiff seeks to represent a nationwide class defined as:

> All persons in the United States who purchased the Product for personal or household use during the statute of limitations period (the "**Nationwide Class**").

59. Plaintiff also seeks to represent a California Subclass defined as:

> All Class members who purchased the Product for personal or household use in California during the statute of limitations period (the "**California Subclass**").

60. Collectively, the Nationwide Class and California Subclass shall be referred to as the "Classes."

61. Excluded from the Classes are (1) Defendant and any entities in which Defendant has a controlling interest; (2) Defendant's agents and employees; (3) any Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staff and immediate families; (4) Plaintiff's Counsel; and (5) Defendant's Counsel.

62. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be modified, expanded, or narrowed by amendment to the Complaint or narrowed at class certification.

63. ***Numerosity.*** The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates there are hundreds of thousands of members in the Classes. Plaintiff does not know the exact number of members in the proposed Classes but reasonably believes, based on the scale of Defendant's business, that the Classes are so numerous that individual joinder would be impracticable.

64. ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to, the following:

(a) Whether the Product contained the avocado oil;

(b) Whether Defendant knew or should have known the Product contained oils other than avocado oil;

(c) Whether Defendant is liable to Plaintiff and the Classes for unjust enrichment;

(d) Whether the substitution and/or inclusion of other oils renders the Product misbranded;

(e) Whether Defendant violated the state consumer protection statutes alleged herein;

(f) Whether Plaintiff and the Classes have sustained monetary loss and the proper measure of that loss;

(g) Whether a reasonable consumer would consider the avocado oil content in the Product to be material;

(h) Whether the packaging for the Product is deceptive.

65. ***Typicality.*** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff, like all members of the Classes, purchased the Product, which did not include avocado oil, in reliance on the representation and warranty described above. Plaintiff and members of the Classes suffered a loss as a result of the purchases and so were injured by Defendant's misconduct in the very same way. In other words, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

66. ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes.

67. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by

members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750, *et seq.***
**(By Plaintiff on Behalf of the California Subclass)**

68. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

69. Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

70. Plaintiff and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d). By purchasing Defendant's Product, Plaintiff and the Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

71. Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Product is a "good" within the meaning of Cal. Civ. Code § 1761(a).

72. Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Product.

73. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

74. Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

75. Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

76. Defendant violated these provisions by misrepresenting that the Product is made with avocado oil and/or is exclusively made with avocado oil, when it is not and instead is made with and/or includes cheap, refined seed oils.

77. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

78. Plaintiff and the Members of the California Subclass suffered economic injury as a direct and proximate result of Defendant's violation because: (a) they would not have purchased the Product on the same terms if they had known that the Product was not made with avocado oil like Defendant affirmatively stated; (b) they paid a price premium compared to Product without the misrepresentation alleged herein; and (c) the Product did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

79. Plaintiff and Members of the Classes seek to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violations Of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, e*t seq*.**
**(On Behalf of Plaintiff and the California Subclass)**

80. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

81. Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

82. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

83. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

84. Finally, Defendant engaged in unlawful business practices by violating the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

85. In addition, as described more fully above, Defendant's misleading marketing, advertising, packaging, and labeling of its Product is likely to deceive reasonable consumers. In addition, Defendant has committed unlawful business practices by, *inter alia*, making the presentation and omission of material facts, as set forth more fully above, thereby violating the common law.

86. Defendant has also violated the UCL's proscription against engaging in **<u>Unfair Business Practices</u>**. Defendant's acts, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of the conduct outweighs any alleged benefits attributable to such conduct. Defendant's deceptive practices led consumers to purchase the Product over other comparable avocado oil chip Product that properly represents its oil content. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from

Defendant's conduct. Since consumers reasonably rely on the Product's labels, consumers could not have reasonably avoided such injury.

87. Plaintiff and the Members of the California Subclass suffered a substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair packaging about the defective nature of the Product.

88. Finally, Defendant has further violated the UCL's proscription against engaging in **Fraudulent Business Practices**. Defendant's claim and misleading statement concerning the Product's avocado oil content, as more fully set forth above, was false, misleading and deceived the consuming public.

89. Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Members of the California Subclass are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

90. Pursuant to California Business and Professional Code § 17203, Plaintiff and the Members of the California Subclass seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

## COUNT III
**Violations Of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

91. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

92. Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

93. The FAL makes it "unlawful for any person … to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any

other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

94. Defendant committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of its Product by representing on the Product's packaging that the Product was made with avocado oil when the Product contains no avocado oil and instead are made with cheap, refined seed oils.

95. Defendant knew or should have known that its advertising claims are misleading and/or false.

96. Defendant knew or should have known, through the exercise of reasonable care, that its representation was false and misleading and likely to deceive consumers and cause them to purchase Defendant's Product.

97. Defendant's wrongful conduct was ongoing and part of a general practice that is possibly still being perpetuated and repeated throughout the State of California and nationwide. Plaintiff and the Members of the California Subclass were injured in fact and lost money and property as a result.

98. The misrepresentation and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

99. As a result of Defendant's wrongful conduct, Plaintiff and the Members of the California Subclass lost money in an amount to be proven at trial. They are therefore entitled to restitution as appropriate for this cause of action.

100. Plaintiff and the Members of the California Subclass seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; injunctive relief, reasonable attorneys' fees, and all other relief that the Court deems proper.

101. Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to the Members of the California Subclass are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

102. Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchases of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff and the Members of the California Subclass would be left without the parity in purchasing power to which they are entitled.

**COUNT IV**
**Breach Of Express Warranty**
**(On Behalf of Plaintiff and the Classes)**

103. Plaintiff hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

104. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass against Defendant.

105. Plaintiff brings this claim under the laws of the State of California.

106. In connection with the sale of the Product, Defendant issued written express warranties in that Defendant affirmatively warranted that the Product was made with avocado oil. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Product, expressly warranted that the Product was fit for its intended purpose by making promises and affirmations of fact on the Product's packaging.

107. The affirmation of fact and promise made by Defendant to Plaintiff and the Classes regarding the Product became part of the basis of the bargain between Defendant, Plaintiff, and the Members of the Classes, thereby creating an express warranty that the Product would conform to those affirmations of fact, representations, promises, and descriptions. However, the Product did

not, in fact, contain the avocado oil promised on the packaging and instead contained undisclosed cheap, refined seed oils.

108. Plaintiff and Members of the Classes suffered economic injury as a direct and proximate result of Defendant's breach of warranties because: (a) they would not have purchased the Product on the same terms if they had known that the Product had been falsely labeled as alleged herein; (b) they paid a price premium for the Product based on Defendant's express warranties; and (c) the Product did not have the characteristics, uses, or benefits as promised by Defendant on the packaging. As a result, Plaintiff and Members of the Classes have been damaged either in the full amount of the purchase price of the Product or in the difference in value between the Product as warranted and the Product as sold.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

109. Plaintiff hereby re-alleges and reincorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

110. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

111. Plaintiff brings this claim in the alternative to the extent allowed under Fed. R. Civ. P. 8(d)(2).

112. Plaintiff brings this claim under the laws of the State of California.

113. Plaintiff and Members of the Classes conferred a benefit in the form of monies paid to Defendant by purchasing a mislabeled Product.

114. Defendant voluntarily accepted and retained this benefit.

115. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Product. Retention of those monies under these circumstances is unjust and inequitable in light of the misrepresentations of fact made by Defendant in the packaging of the Product. These misrepresentations caused injuries to Plaintiff and Class Members because they would not have purchased the Product if the true facts had been known.

116. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for mislabeled Product, it would be unjust and inequitable for Defendant to retain it without paying the value thereof. Accordingly, Plaintiff and members of the Classes seek restitution as ordered by the Court.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks Judgment against Defendant, as follows:

(a) For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representatives for the Classes, and naming Plaintiff's attorneys as Class Counsel;

(b) For an order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For injunctive relief as pleaded or as the Court may deem proper; and

(e) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues in this action so triable as of right.

Dated: August 14, 2026

**BURSOR & FISHER, P.A.**

By: /s/ *Neal J. Deckant*
Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
Ines Diaz Villafana (State Bar No. 354099)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
idiaz@bursor.com
kvalenzuela@bursor.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Neal J. Deckant, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Joanna Bayer who resides in Oakley, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Bayer's claims are alleged to have occurred in this District. Specifically, Plaintiff Bayer alleges that she purchased the Product in this District within the statute of limitations period.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 14th day of August, 2026.

*/s/ Neal J. Deckant*
Neal J. Deckant